UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN CERICOLA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-391-DBH |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[2]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge wrongly interpreted raw medical evidence and that his decision was not supported by substantial evidence. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for purposes of SSD only through December 31, 2005, Finding 1, Record at 13; that, through the date last insured, he suffered from anxiety-related disorder, elements of bipolar disorder, elements of personality disorder/narcissistic disorder, and exertional asthma, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 13, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 13-14; that, through the date last insured, the plaintiff had the residual functional capacity ("RFC") for work at the medium exertional level, with the ability to push and pull with all extremities within the weight tolerances for lifting and carrying at the medium exertional level, frequently climb stairs/ramps/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl, frequently reach in all directions, handle, finger, and feel, but should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity, and even moderate exposure to irritants and poor ventilation, while he can understand, remember, and execute moderately detailed instructions and interact occasionally with coworkers and supervisors, but never with the general public, and should avoid a work environment with a pressured pace or that requires high production standards, Fining 5, *id*. at 15; that, through the date last insured, the plaintiff was capable of performing his past relevant work as an animal caretaker, Finding 6, *id*. at 22; and that, therefore, he was not under a disability as that term is defined in the Social Security Act at any time from the date of alleged onset of disability, October 15, 2005, through the date last insured, December 31, 2005, *id*. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff challenges the portion of the administrative law judge's RFC that states that he "could tolerate brief supervision, but would be better suited for independent work." Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 7) at 3. He contends that this limitation is not supported by substantial evidence, asserting that the medical expert's testimony at hearing described "interactional difficulties which are problematic regardless of the frequency of supervision." *Id*. at 3-4.

The relevant testimony of the medical expert, some portions of which are relied upon by the plaintiff, is the following:

> Q  What about the ability to interact with coworkers, supervisors, or the general public?
> A  Well, I think that there is some difficulty in interacting with any of those classes of people . . . . In terms of dealing with supervisors, I think there's an additional issue that is if he perceives criticism or disapproval, that he is particularly likely to become more anxious and, you know, engage in extended discussion or debate about decisions and following directions and things like that.
>
> Q  Okay. . . . You believe that the mental impairments present before December 31st, 2005[,] would interfere with interaction, definitely with the general public?
> A  Correct.

Q  And also, to some extent, interaction with coworkers and supervisors, particularly in situations where there's perceived criticism?
A  That's correct.

\* \* \*

A . . . I think the problem with criticism and supervisors, you know, it very much depends on how the supervisor interacts with him.  I know this is probably complicating things for you, but I think if he were given a task to perform and was then left to do it on his own, that he could carry that out.  I think that if he was in a situation where the supervisor was having input into how well he was doing or decisions that he was making along the way, in terms of prioritizing things or something like that, that there would be likely to be problematic conflict.

\* \* \*

A . . . I think the work stresses that would be problematic would revolve around interactions with other people, particularly supervisors and/or, as I indicated earlier, with particularly intense pace or productivity demands.
Q  But you feel he would have trouble with the normal stresses that exist in normal workplaces in terms of dealing with supervisors?
A  Yes.

\* \* \*

Q . . . Is it that he can never tolerate any supervision, or cannot ever tolerate criticism of his work?
A  No, I don't think it's to the level of not being able to ever tolerate it.  I think that he could tolerate occasional or well-modulated criticism.  I think, you know, that, you know, sharply critical or frequent criticism would lead to his not being able to persist at the work setting.  But, you know, infrequent or occasional criticism and criticism essentially limited to, very specifically, "this is the way the job needs to be done" kind of things would be managed.

\* \* \*

A  I think – again, I think it almost depends on how it's done; that if he is told, you know, "you need to be here and do this at this time," and "you are late," or "you are not doing what I asked you to do," that kind of thing would [b]e manageable.  I think he would be upset, but I think he could – he could tolerate that.  I think if the criticism leaks into the area where it appears to be more personal, where, you know, he's seeing – he's being told to do something that he thinks is wrong, such as – he talked about in – at Secure Horizons, if he was not – if the, you know, the customer or whatever, did not know the benefits as prescribed in the insurance literature, that they were not supposed to tell them about that, but I, from his prior testimony, got the impression that he thought that that was a wrong way to handle things and that kind of criticism would've, again, been certainly problematic.  Sometimes psychological

> functioning doesn't fit well into the Social Security's system of description of things.
>
> * * *
>
> A . . . . You know, it's different from saying, "The way you do this particular task is X," "You need to do this before you do that," kind of, which is criticism. I think he could tolerate that. I think, you know, if he was told to do something that he thought was morally incorrect or dangerous, that they said, "yeah, fine, don't – you don't need to wear a respirator even though we are," for example, then he would have a significant problem with it.

Record at 558-61, 570-72.

The plaintiff argue that the limitations discussed by the medical expert "are well beyond tolerating brief supervision," and that the phrase "better suited to independent work," is meaningless. Itemized Statement at 5. He further contends that this testimony establishes such a substantial loss of the ability to respond appropriately to supervision, coworkers and usual work situations "as to make a finding of disability appropriate[,]" citing Social Security Ruling 85-15. *Id*. at 7. I disagree.

At this point in the proceedings, the plaintiff must demonstrate that a different outcome was not only appropriate, but required. *E.g., Keefe v. Astrue*, Civil No. 09-116-B-W, 2009 WL 5216059, at *3 (D. Me. Dec. 29, 2009). This he has failed to do. The plaintiff's interpretation of the medical expert's testimony is no more reasonable than that of the administrative law judge. The medical expert's nuanced testimony does not describe a condition "well beyond tolerating brief supervision," nor is the phrase "better suited to independent work" meaningless. Further, the fact that the administrative law judge interpreted the medical expert's testimony differently from the plaintiff's interpretation does not necessarily mean that he interpreted raw medical data, which otherwise would be a violation of a requirement imposed by Social Security case law.

The vocational expert testified that the plaintiff was capable of performing his past work as an animal caretaker consistent with the medical expert's testimony about his difficulties with

supervision, as she and the administrative law judge understood that testimony. *See generally* Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) § 410.674-010. Nothing further was required.

Social Security Ruling 85-15 similarly does not require a different result. That ruling, insofar as it addresses mental impairments, is intended to emphasize that a finding that a mental impairment does not meet or equal a Listing is not definitive for purposes of an application for benefits: "The decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work." Social Security Ruling 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 347. The Ruling goes on to say: "In the world of work, losses of intellectual and emotional capacities are generally more serious when the job is complex. Mental impairments may or may not prevent the performance of a person's past jobs." *Id*. The Ruling directs that only when a mental impairment prevents the claimant from performing his past work and prevents the transfer of acquired work skills does the question become whether the claimant can be expected to perform unskilled work. *Id*. That question, which is fundamental to the plaintiff's argument, Itemized Statement at 7, is not implicated in this case.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of September, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge